The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillip Holmes. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between the plaintiff-employee and defendant-employer on 4 January 1995.
3. On 4 January 1995, defendant-employer was self-insured and Key Risk Management Services, Inc. was administering its workers' compensation program. From 31 October 1995 to the present, defendant-employer's workers' compensation carrier has been American Motorists Insurance Company.
4. Plaintiff's average weekly wage on 4 January 1995 was $522.09 yielding a compensation rate of $348.04 per week.
5. Plaintiff experienced a compensable injury by accident to her right elbow on 4 January 1995.
6. Plaintiff received $1,712.00 in unemployment benefits, to which the liable defendant is allowed a credit.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 39 year old woman with employment experience as a factory worker and farm worker. Plaintiff injured her right elbow on 4 January 1995, when she was operating an extruder machine for the defendant-employer. The defendant-employer and it's third party administrator, Key Risk Management Services, accepted liability for the injury by accident.
2. Plaintiff was initially treated by Dr. Mark Zeringue on 5 January 1995. Dr. Zeringue diagnosed plaintiff as having a contusion to her ulnar nerve. Significant bruising was noted around plaintiff's right elbow.
3. Plaintiff missed one day of work and returned to work, continuing to work even though she continued to experience pain in her right elbow. In March or April of 1995, plaintiff was reassigned by defendant-employer to a braider machine operator. Plaintiff was in charge of 28 machines which held 16 bobbins each; the bobbins weighed one pound. Each bobbin would have to be changed approximately twice during an eight-hour shift. Thus, a total of 896 bobbins would be changed during an eight-hour shift. Plaintiff's job also involved other varied duties, such as doffing which consisted of removing large take-up spools from the front of the machine, applying tape rolls to each machine as needed, completing production reports and patrolling the machines to ensure proper running. The tasks of plaintiff's job were varied throughout the shift.
4. Plaintiff's right arm bothered her increasingly during 1995 and 1996. Plaintiff did not seek medical treatment for her right elbow between February 1995 and July 1996.
5. On 2 July 1996, plaintiff was doing her normal job without interruption and was reaching across a braiding machine when she felt her right elbow pop, experiencing pain in her right arm.
6. Plaintiff returned to Dr. Zeringue, and was placed on light duty. The employer provided light duty up through 31 December 1996. Plaintiff's employment with defendant-employer was terminated on 31 December 1996 because there was no more light duty work available. Plaintiff is not seeking any disability or lost income for the period of time that she was on light duty.
7. Plaintiff was treated conservatively by her family physician, Dr. Zeringue, and an orthopedic surgeon, Dr. Anthony DeFranzo. Plaintiff's diagnosis was cubital tunnel syndrome, which developed as a result of the scarring from the ulnar nerve contusion from the 4 January 1995 injury. In October, 1996, plaintiff also was diagnosed by Dr. DeFranzo as having lateral epicondylitis in her left elbow, which was a result of overuse of her left arm since she was not able to use her right arm in a normal manner. There is no evidence that the lateral epicondylitis conditions were disabling. The lateral epicondylitis resolved with rest. Plaintiff was also seen and examined by Dr. Gary Kuzma and Dr. Elizabeth Meyerdierks.
8. Plaintiff returned to work with a different employer, John H. Harlan Company, on 7 July 1997, working as a check printer. Plaintiff's new job was within her job restrictions. However, her pay was not as great as it was with defendant-employer. Plaintiff made $7.50 per hour for forty hours per week.
9. Plaintiff reached maximum medical improvement on 7 October 1997, and Dr. DeFranzo assigned a 5% permanent partial disability impairment to plaintiff's right arm.
10. The medical testimony in this case establishes that plaintiff's original injury of 4 January 1995 was a contusion to the ulnar nerve, which never healed properly, was aggravated by plaintiff's continued repetitive work with defendant-employer, and subsequently developed into cubital tunnel syndrome.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff's cubital tunnel syndrome is a result of her compensable 4 January 1995 injury by accident, for which defendant-employer by and through Key Risk Management Services, Inc., is liable. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff did not contract cubital tunnel syndrome as an occupational disease due to causes and conditions characteristic of and peculiar to her employment with defendant-employer. N.C. Gen. Stat. § 97-53(13).
3. Plaintiff was unable to earn wages with defendant-employer or in any other employment as a result of her 4 January 1995 compensable injury by accident from 1 January 1997 until 7 July 1997, and is entitled to be paid $348.04 per week for said period. N.C. Gen. Stat. § 97-29.
4. Plaintiff has been temporarily partially disabled as a result of her cubital tunnel syndrome since 8 July 1997 and continuing. N.C. Gen. Stat. § 97-30.
5. Plaintiff has sustained a permanent partial disability impairment rating of 5% to her right arm as a result of her 4 January 1995 compensable injury by accident. N.C. Gen. Stat. § 97-31.
6. Medical treatment provided to plaintiff, as a result of her compensable injury by accident of 4 January 1995, was reasonably required to effect a cure, give relief, and did tend to lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. As a result of plaintiff's 4 January 1995, injury by accident, defendant-employer by and through Key Risk Management Services, shall pay plaintiff temporary total disability at the compensation rate of $348.04 from 1 January 1997 through 7 July 1997, less the credit for unemployment benefits in the amount of $1,712.00. This amount has accrued and shall be paid in a lump sum, subject to the attorney fee approved below.
2. As a result of plaintiff's compensable injury by accident of 4 January 1995, plaintiff shall make an election of whether to accept from defendant-employer by and through Key Risk Management Services, Inc., compensation at the rate of $348.04 per week for twelve weeks on account of her 5% permanent partial disability impairment of her right arm pursuant to N.C. Gen. Stat. §97-31, or receive a weekly compensation from 8 July 1997 and continuing until further order of the Industrial Commission, compensation equal to 66 2/3% of the difference between her average weekly wage of $522.09 before her injury and the average weekly wage plaintiff earned thereafter. Said compensation shall not exceed 300 weeks, and if elected by the plaintiff shall be administered pursuant to N.C. Gen. Stat. § 97-30. Said election of the above shall be subject to an attorney fee provided below.
3. Defendant-employer by and through Key Risk Management Services shall pay all medical expenses resulting from plaintiff's compensable injury by accident incurred, or to be incurred, so long as such treatment is reasonably required to effect a cure, give relief, or tends to lessen plaintiff's period of disability.
4. A reasonable attorney fee of 25% of the accrued compensation due plaintiff in paragraphs one and two of this Award, is approved for plaintiff's counsel. Thereafter, plaintiff's counsel shall receive every fourth check. Said attorney's fees shall be deducted from the compensation due plaintiff and paid directly to plaintiff's counsel.
5. Defendant-employer, by and through Key Risk Management Services, shall pay the costs which include, but are not limited to, expert witness fees of $250.00 to Dr. Mark Zeringue, and $250.00 to Dr. Gary R. Kuzma.
This the ___ day of August 1998.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _______________ CHRISTOPHER SCOTT COMMISSIONER
S/ _______________ RENÉE C. RIGGSBEE COMMISSIONER
TJB/cnp/db